**DavidIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER JAMES MANSOORI (#2019-1007189), | ) ) ) | |
| Plaintiff, | ) ) | No. 22-cv-01638 |
| v. | ) ) | Judge Andrea R. Wood |
| COUNSELOR MARTINEZ, et al., | ) ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff may proceed with his complaint [1] consistent with his order. The Clerk of Court is directed to: (1) file Plaintiff's complaint; (2) issue summons for service of the complaint on Defendant Dart; (3) dismiss Counselor Martinez from this case; and (4) send Plaintiff one blank USM-285 service form, filing instructions, and a copy of this order. Because Plaintiff has paid the filing fee and is not proceeding *in forma pauperis*, he is not necessarily entitled to service at government expense. Fed. R. Civ. P. 4(c)(3). Additionally, Plaintiff has not demonstrated that he cannot pay the required deposit to the U.S. Marshal. Plaintiff must either: (1) serve the Defendant himself; (2) retain a private process server to serve Defendant; or (3) employ the services of the U.S. Marshal to serve Defendant. The U.S. Marshal is directed to send Plaintiff the request for payment of the deposit to effectuate service (service costs generally range between $65.00 and $250.00 per location). If Plaintiff elects to employ the services of the U.S. Marshal, he must pay the required deposit and submit the completed USM-285 service form by 9/6/2022; the U.S. Marshal will not take further action until the deposit has been paid and the USM-285 service form is returned. Plaintiff also must promptly submit a change-of-address notification if he is transferred to another facility or released. If Plaintiff fails to keep the Court informed of his address, this action will be subject to dismissal for failure to comply with a Court order and for failure to prosecute. The Clerk is directed to send a copy of this order to Plaintiff and the U.S. Marshal.

**STATEMENT**

Plaintiff Christopher Mansoori, a detainee at the Cook County Jail, brings this *pro se* civil rights action under 42 U.S.C. § 1983, alleging unconstitutional conditions of confinement and subsequent deliberate indifference to his serious medical needs.

**I.**

Under 28 U.S.C. § 1915A, the Court screens complaints filed by prisoners seeking redress from governmental entities, or officers or employees of governmental entities, and must dismiss any complaint or claim therein that is frivolous or malicious, fails to state a claim on which relief

may be granted, or seeks monetary relief against an immune defendant. 28 U.S.C. § 1915A(a); *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Screening complaints under § 1915A requires application of the same standard as for motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). That notice-pleading standard requires that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). Courts also construe *pro se* complaints liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

Here, Mansoori alleges that Sheriff Tom Dart failed to administer any protocol regarding COVID-19 that would stop the cross-contamination of infected inmates with healthy inmates. (Compl. at 13, Dkt. No. 1.) Instead, according to Mansoori, Sheriff Dart allowed the jail to move infected inmates around the jail without any consideration to Mansoori's health. (*Id.*) Further, on March 19, 2020, Counselor Martinez was absent and did not provide or leave any grievance forms until Mansoori left the deck on April 16, 2020. The grievance forms were deliberately withheld so inmates could not document or grieve their medical conditions. (*Id.* at 14.) Mansoori eventually contracted COVID-19. That, coupled with Mansoori's pre-existing heart condition, caused various serious side effects including shortness of breath, diarrhea, sore throat, body aches, nausea, and heart palpitations. (*Id.* at 15.) Jane Doe Nurse refused to acknowledge the severity of Mansoori's condition by failing to test Mansoori for Covid-19, and left Mansoori to die alone in his cell. (*Id.*) Mansoori was so sick that he could not move for two days. (*Id.*) Jane Doe Nurse would come take Mansoori's vitals every day, but she was just "going through the motions," and never actually treated Mansoori, no matter how often he complained to her about his symptoms. (*Id.*)

## II.

To state a deliberate indifference claim as a pretrial detainee, Mansoori must allege facts indicating he faced a serious medical condition and that jail officials made purposeful, knowing, or possibly reckless (as opposed to negligent) decisions to respond to that risk in a manner that was objectively unreasonable under the circumstances. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *see also King v. Newbold*, 815 F. App'x 82, 85 (7th Cir. 2020) (considering delayed medical care claim under Eighth Amendment standard applicable to prisoners and concluding that even short delays can be actionable) (citing *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010)).

Given the Court's liberal construction of *pro se* pleadings, Mansoori's allegations that Jane Doe Nurse failed to treat Mansoori even though he displayed severe symptoms related to COVID-19 warrant further inquiry. Mansoor thus may proceed on his deliberate indifference claim against Nurse Jane Doe. Sheriff Dart, however, remains in this case only as a nominal Defendant for the purpose of identifying Nurse Jane Doe for the reasons set forth below.

Although the Court is sympathetic to Mansoori's experience regarding COVID-19, his allegations that Sherriff Dart and Counselor Martinez failed to respond appropriately to the pandemic do not state a claim. The Fourteenth Amendment governs claims brought by pretrial detainees. *See Miranda*, 900 F.3d at 335, 352–54. To state such a claim, a pretrial detainee must adequately allege that: (1) he was subjected to conditions that "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health;" (2) the defendant "acted purposefully, knowingly, or perhaps even recklessly," in regard to those conditions; and (3) the defendant's conduct was objectively unreasonable. *See id.*; *Darnell v. Pineiro*, 849 F.3d 17, 30, 35 (2d Cir. 2017). Importantly, the Constitution does not require jail officials to eliminate completely the risk posed by COVID-19 to the inmate population. Rather, jail officials are required only to respond reasonably to that risk. *See Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). Further, § 1983 creates a cause of action based on personal liability and predicated on fault; so to be held liable, an individual must have caused or participated in a constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012); *Pepper v. Vill. of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005). Moreover, there is no *respondeat superior* (*i.e.*, supervisory) liability under § 1983. *See Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Instead, supervisors can be held responsible for the constitutional violations of their subordinates only if the violation occurred at the supervisor's direction or with his or her knowledge and consent. *See Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003).

The Seventh Circuit also has observed that the Center for Disease Control's Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities recommends "implementing social distancing strategies where feasible" and recognizes that the guidance may need to be adapted based on individual facility's space, staffing, population, and other factors. *Mays v. Dart,* 974 F.3d 810, 818-22 (7th Cir. 2020). The Seventh Circuit has found these guidelines relevant to the objective reasonableness inquiry under the Fourteenth Amendment, *id.* at 823, and also has advised courts that in determining the reasonableness of the government's response to the COVID-19 pandemic, they must consider "the totality of the facts and circumstances" and must defer to correctional administrators in matters implicating security concerns. *Id.* at 820–21.

Mansoori's allegations that Sheriff Dart failed to implement safety measures, fail to state a claim. The pandemic is an unprecedented crisis with which jail officials have had to cope, and the CDC guidelines and the Seventh Circuit have recognized that their ability do so may be constrained by the structural features of a facility and other penological concerns. The particular deficiencies that Mansoori perceives in the jail's response to COVID-19—*i.e.,* moving infected inmates around the jail to different divisions without any consideration to Mansoori's health—do not suggest that Sheriff Dart's response to the pandemic was so far afield as to violate his constitutional rights. It does not appear unreasonable to the Court that inmates were placed in isolation or moved to various locations in the prison. To the contrary, those factual allegations

3

display reasonable mitigative attempts to curb the spread of COVID-19. Mansoori's allegations that he should have received COVID testing likewise does not implicate the constitution. *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (explaining, in prison context, that inmates are not entitled to demand specific diagnostic testing); *see also Dunmore v. Trump*, No. 20 C 50114 (N.D. Ill.) (declining to find federally protected right to COVID-19 testing in custodial setting). Over the course of the pandemic, testing frequently has been in short supply and often difficult to obtain even for those not incarcerated. Accordingly, claims against Sheriff Dart are dismissed without prejudice for failure to state a claim.

Turning to the allegations against Counselor Martinez, Mansoori claims that he went on extended leave without leaving Mansoori with grievance or medical slips. The Prison Litigation Reform Act requires prisoners to exhaust available administrative remedies before seeking relief in federal court. 42 U.S.C. § 1997e(a). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim" in federal court. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999). "If administrative remedies are not 'available' to an inmate, then an inmate cannot be required to exhaust." *Kaba v. Stepp*, 458 F.3d 684 (7th Cir.2006); *see also King*, 781 F.3d at 896 ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."). Administrative remedies are primarily "unavailable" to prisoners where "affirmative misconduct" prevents prisoners from pursuing administrative remedies. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir.2006) (remedies unavailable where prison officials "do not respond to a properly filed grievance"); *see also Thomas v. Reese*, 787 F.3d 845, 847–48 (7th Cir.2015) (remedies unavailable where correctional officer tells prisoner that prisoner cannot file grievance when in fact prisoner can do so); *Kaba*, 458 F.3d at 680, 686 (remedies unavailable where prisoner presents evidence that prison personnel have "denied [prisoner] grievance forms, threatened him, and solicited other inmates to attack him in retaliation for filing grievances"). If Mansoori purports to offer his inability to file a grievance to excuse himself from the PLRA requirement, he has successfully plead such. However, Mansoori's allegations are insufficient to state a claim against Counselor Martinez for deliberate indifference to his medical needs. Accordingly, Mansoori's claims against Counselor Martinez are dismissed without prejudiced for failure to state a claim.

The Court directs the Clerk of Court to issue summons for service of the complaint on nominal Defendant Dart. To obtain damages, Mansoori must identify the unknown nurse by name in an amended pleading and serve her in accordance with Fed. R. Civ. P. 4. Once an attorney has entered an appearance on behalf of Defendant Dart, Mansoori may send defense counsel interrogatories—a list of questions—eliciting information regarding the identity of the nurse. *See* Fed. R. Civ. P. 33. Once the unknown nurse's identity is known, Mansoori must submit an amended complaint identifying her. Summons will then issue for service on the previously-unknown Defendant. Mansoori is reminded that Defendant Dart remains in this case only as a nominal Defendant for the purpose of identifying remaining Defendant. He is further advised that there is a two-year statute of limitations for civil rights actions, which typically runs from the date of the injury. *See Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). Mansoori should therefore attempt to identify the Doe Defendant as soon as possible in light of the statute of limitations and applicable tolling rules. *See Bryant v. City of Chicago*, 746 F.3d 239 (7th Cir. 2014).

  Because Mansoori has paid the filing fee and is not proceeding *in forma pauperis*, he is not necessarily entitled to service at government expense. Fed. R. Civ. P. 4(c)(3). Therefore, Mansoori must either: (1) serve Defendant himself; (2) retain a private process server to serve Defendant; or (3) employ the services of the U.S. Marshal to serve Defendant. The U.S. Marshal is directed to send Mansoori the request for payment of the deposit to effectuate service (service costs generally range between $65.00 and $250.00 per location). If Mansoori elects to employ the services of the U.S. Marshal, he must pay the required deposit; the U.S. Marshal will not take further action until the deposit has been paid. Failure to effect service by the date set forth above may result in dismissal of this case.

  The Court instructs Mansoori to file all future papers concerning this action with the Clerk of this Court in care of the Prisoner Correspondent. Any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions may be disregarded by the Court or returned to him. Mansoori is advised that he must promptly submit a change-of-address notification if he is transferred to another facility or released. Failure to do so may lead to dismissal of this action for failure to comply with a Court order and for want of prosecution.

Date: July 25, 2022

                Andrea R. Wood
                United States District Judge