UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Christopher James Mansoori, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 22 CV 1638 |
| | ) | |
| Sheriff Dart, *et. al.*, | ) | Judge Lindsay C. Jenkins |
| | ) | Magistrate Judge Jeffery T. Gilbert |
| Defendants. | ) | |

### DEFENDANT SHERIFF DART'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT (DKT. 29) AND AFFIRMATIVE DEFENSES

Defendant, Sheriff Dart, in his official capacity, by his attorney, KIMBERLY M. FOXX, State's Attorney of Cook County, through her Assistant State's Attorneys, Jorie R. Johnson, and Joel M. Zeid, and answers Plaintiff's Amended Complaint (Dkt. 29) as follows:

**Statement of Claim:**

1. As of March 21, 2020 three inmates were moved into Division 6 tier 1k who displayed signs of illness. They were tested and put back on our tier. One inmate bonded out, he was in the cell to my right. Another inmate, in the cell to my left, was removed after he tested positive. The third inmate remained on the tier for another week, of Cook County Jail.

**ANSWER: Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 1 and therefore, they are denied.**

2. All of the jail staff, including classification, was aware that covid19 was running rampant through the jail, as early as February 2020, while I was on tier 3C of Division 10 in February, a handful of inmates were removed from the tier and put in isolation after taking tests that came back positive. The chief judge ordered by March 17, 2020 that all in person court proceedings were suspended until further notice due to covid.

**ANSWER: Defendant Sheriff Dart admits on March 14, 2020, Chief Judge Timothy Evans suspended certain in-person court proceedings and limited criminal hearings due to the Covid-19 Pandemic. Defendant Sheriff Dart denies Covid-19 was "running rampant through the jail." Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 2 and therefore, they are denied.**

3. Tom Dart was well aware of the dangers covid posed, and the state of the jail population, where the disease was prevalent. It was publicly broadcasted on the news, the virus was easily contracted, and it was airborne. The news publicized "Cook County Jail is a hotspot for covid 19".

**ANSWER: Defendant Sheriff Dart denies the allegations in paragraph 3.**

4. Tom Dart did not respond reasonably to the presence of covid19 in his jail. Classification moved inmates around the jail recklessly, exposing non-infected inmates to infected inmates.

**ANSWER: Defendant Sheriff Dart denies the allegations in paragraph 4.**

5. A similarly situated plaintiff, Randy Brown, in case number 21-cv-1015 and/or case number 2021-cv-05400 named Jessie Mannie Estrada a.k.a Israel Rocha Junior as a defendant. The defendant is the head of classification in Cook County Jail, Tom Dart's subordinate. Randy Brown made claims in this United States District Court against classification for making approximately 17,000 inmate movements for housing, during covid, responding recklessly to the known risks of covid, causing cross-contamination and infecting inmates. The court accepted Randy Brown's claims against the head classification upon reconsideration. This decision was published across the country in numerous law bulletins. Similarly, I raise the same

claim against Tom Dart , in that he supervised classification, and he knew they were ordering infected inmates to be moved onto tier 1K of Division 6 and other places within the jail.

**ANSWER: Defendant Sheriff Dart denies the allegations in paragraph 5.**

6. These acts caused my exposure to covid19 on the tier. Tom Dart allowed his subordinates to recklessly move inmates through out the jail even though he knew covid19 was highly contagious and a serious health risk to every inmate confined in Cook County Jail. This conduct was objectively unreasonable, and a violation of duty.

**ANSWER: Defendant Sheriff Dart denies the allegations in paragraph 6.**

7. As Top Sheriff, Dart is responsible for making sure he and his subordinates respond reasonably to the risks of covid within the jail. I assert and make claims that classification and Tom Dart were objectively unreasonable when they moved three infected inmates onto tier 1K, even though the entire court system had took reasonable precautions and suspended in-person court by March 17, 2020, but made that announcement at least a week before halting movement.

**ANSWER: Defendant Sheriff Dart admits he has specific responsibilities, including the hiring and training of all personnel to operate and maintain the Cook County Jail, pursuant to statute. Defendant Sheriff Dart denies the remaining allegations in paragraph 7.**

8. The jail and classification acted recklessly to that risk, under Tom Dart's supervision, and caused the entire tier of 1K to be exposed to covid, when they moved infected inmates onto the tier during the time period it was known to be a high risk of spreading covid. I caught covid.

**ANSWER: Defendant Sheriff Dart denies the allegations in paragraph 8.**

9. On March 26th and 27th 2020, my cellmate Marcus Mitchell complained of a headache. I believe we were placed on a quarantine March 27, 2020 because on the same day

Mitchell had a fever over 100°F. The nurse came on the deck checking temperatures for the first time. He was never tested for covid though, no one else on the deck was tested after the initial removed inmate. On March 28, 2020 we were placed in single man cells on the tier.

**ANSWER: Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 9 and therefore, they are denied.**

10. Since I was housed with Marcus Mitchell, I believe I got sick sharing the air with him. There were additional inmates, who classification moved onto our tier, who did not quarantine upon the arrival to the county jail. This was also objectively unreasonable.

**ANSWER: Defendant Sheriff Dart denies he acted objectively unreasonably. Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 10 and therefore, they are denied.**

11. Once our tier was quarantined, we were all subjected to exposure of the virus, by one another, originating with the initial inmates classification moved, that were infected, onto the tier. Once quarantined, counselors did not appear, grievance forms had been absent since 3/21/20.

**ANSWER: Defendant Sheriff Dart denies the allegations in paragraph 11.**

12. Through out the duration of our quarantine all forms were not available, and nearly all inmates on deck claimed to be experiencing some form of symptom the t.v. was saying demonstrated the corona virus. The symptoms stated on t.v. were: loss of taste (my indicator), diarrhea (another indicator), loss of smell, shortness of breath, cough, heart palpitations, body aches, chills, and fever. It hit me the hardest, if not, one of the hardest. Some people fainted and hit their head, others were just weak and feeling ill. No one else was deemed ill by medical staff even though some of us had fevers. I had a temperature of 99.7 and 99.4 on the first few days of

temperature check. March 28, 2020, I woke up ill, the following days I woke up feeling close to death.

**ANSWER: Defendant Sheriff Dart denies the allegations in paragraph 12.**

13. My fever peaked April 2nd and April 3rd of 2020, I soaked my linens with sweat. I did not leave my bed for temperature and/or vital check, it was the only days I did not get up to get checked. I was so ill, in a deep sleep, coma like, and I was not asked or woken to do vital checks, those two days.

**ANSWER: Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 13, and therefore, they are denied.**

14. The next opportunity I had to see the nurse was on April 4, 2020 and I sought her attention then. It was Nurse Alesia Hines. She was cruel to me while I was ill (the same way she was cruel to me and mistreated me when I was ill preceding New Year's Eve 2019). She spoke to me very harshly and refused to acknowledge my weakened physical state. She refused to test me for corona virus. When I previously tested at 99.7°F she said "Oh you'll be fine".

**ANSWER: Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 14, and therefore, they are denied.**

15. April 4, 2020 I was hoping to be treated by Alesia Hines since I was so sick the preceding days, missed the vital checks, and woke up soaked in sweat. When she arrived, I communicated desperately and pleaded, "I'm weak, I can't breathe, I've had diarrhea every day, I haven't eaten in a week, my heart…I need help I'm ill. "She snapped at me and said "Get away from me, you're trying to get me sick and you have a terrible attitude. I'm not doing anything for you." She is a C.M. woman who was cruel, but I was too ill to let the way she treated me be a factor in my death. I just went back to my cell to sleep, hoping not to die.

**ANSWER: Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 15, and therefore, they are denied.**

16. After a week of illness, there was no hope in being treated medically by the nurses. They conducted vital checks every day, but it seemed to be for show, the nurses including Alesia Hines did not care about my medical state or anyone else's.

**ANSWER: Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 16, and therefore, they are denied.**

17. My life did not matter to Tom Dart, classification (Jessie Mannie Estrada a.k.a. Israel Rocha Junior), when they exposed and confined me to the virus, or Alesia Hines after I contracted the virus. I continued to sleep 21 hours out of 24 hours from 3/29/20 through 4/12/20. I willed my way to survive in a hard, dark spot. It wasn't your regular sore throat.

**ANSWER: Defendant Sheriff Dart denies the allegations in paragraph 17.**

18. On 4/9/20 lieutenant Holmes walked onto our tier. I verbally lashed out at him, from inside my cell, for the conditions and disregard for my life. I demanded grievances to document my account of events. He apologized to me and said he was not to blame, he wished me well. He provided the grievances and I wrote, it was nearly three weeks since I was able to document anything. If you read my grievance from that day, I was so weak, the carbon copy is so faint but I screamed for help on paper and condemned my treatment, or lack of.

**ANSWER: Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 18, and therefore, they are denied.**

19. I healed by 4/12/20 and began to eat again. I cried to have survived in my cell alone. I had swore to myself not to die in jail those first days of sickness. I wanted to overcome the virus that Tom Dart and classification recklessly imposed upon me when they moved sick inmates on

each side of my cell, I wanted to overcome the maliscious state in the criminal charges I face, and most importantly live to care for my child.

**ANSWER: Defendant Sheriff Dart denies that he "recklessly imposed" Plaintiff to be exposed to the Covid-19 virus. Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 19, and therefore, they are denied.**

20. I was born with a heart condition. One of the valves in the chamber of my heart is missing a third piece. The condition is called a bicuspid valve, the blood back flows on every pump. Due to this condition, oxygen doesn't get distributed as efficiently as it should, through my body. This pre-existing condition caused covid to really threaten my life at the onset of the virus. There were a full three days I was near death, alone in my jail cell. I refused to die. I pleaded for help, but it fell on deaf ears.

**ANSWER: Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 20, and therefore, they are denied.**

21. During the time of my illness, the staff never tested me for the virus. Alesia Hines never treated me medically while I pleaded for help, she and the other staff disregarded my well being while I focused to pull through in my cell. Alesia Hines fraudulently created medical records stating I "refused vitals to be taken," and other days took no record at all, even though she checked my vitals.

**ANSWER: Defendant Sheriff Dart denies the allegations in paragraph 21.**

22. On April 4, 2020, she refused me medical attention and documented I refused vital check and was belligerent. She was malicious and aimed to conceal it with fraud. I suffered and there is not a single record I was sick with COVID other items than the records I documented

myself. I had two weeks of state food trays piled up and $2.00 in commissary I didn't touch for weeks. Anyone who know me, knows I love to eat. C.O. Pena witnessed my illness. I only got up to use the bathroom and drink water.

**ANSWER: Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 22, and therefore, they are denied.**

23. April 1, 2020, I called Jonathan Bedi, an attorney, and told him I had COVID, he could tell I wall ill, over the phone. Furthermore, corona virus is said to leave everlasting damage to the body and organs. Experts say damage to the lungs, with decreased functionality in absorption of oxygen, kidney disease, reproductive damage, immune system damage as well as diminished memory is all possible long term effects.

**ANSWER: Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 23, and therefore, they are denied.**

24. Since the virus, I am unable to perform the same exercises as I used to, with the high level of endurance I used to possess. I fatigue faster and perform 25% less repetitions before I reach exhaustion, compared to pre-COVID. My body has changed and my short term memory is not as sharp as it was. I believe the virus has changed how I perform for the worst.

**ANSWER: Defendant Sheriff Dart lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 24, and therefore, they are denied.**

25. If one takes into perspective my pre-existing heart condition, with the long term effects of the virus, Tom Dart arguably caused my life expectancy to be shortened by a significant amount, when knowingly consented to his subordinates in classification, to move infected inmates onto tier 1K, even though he knew COVID was in the jail and was easily transmitted through the air and cross contamination.

**ANSWER:  Defendant Sheriff Dart denies the allegations in paragraph 25.**

26. I was not liberty to control my exposure, instead Tom Dart and classification responded unreasonably to the risks of COVID, when they moved potentially ill inmates all around the jail, in a time period known by all to maintain safety through restricted movement, and they imposed the virus upon me. This conduct was objectively unreasonable and reckless in the standard of care required by Tom Dart and his subordinates to take preventive measures in combatting the spread of the virus. Their conduct caused COVID to be imposed upon me, and Alesia Hines did not care if I lived or died once I was ill and sought her attention. I seek redress in this court for all these reasons.

**ANSWER:  Defendant Sheriff Dart denies the allegations in paragraph 26.**

### DEFENDANT'S AFFIRMATIVE DEFENSES

Pleading in the alternative, and without prejudice to the denials in his Answer, Defendant Sheriff Dart asserts the following separate affirmative defenses to Plaintiff's Amended Complaint (Dkt. 29.):

### I.    Qualified Immunity

1. With respect to Plaintiff's claims, Defendant did not cause the deprivation of any constitutional rights of Plaintiff.

2. The conduct of Defendant was at all times objectively reasonable and did not violate any of Plaintiff's clearly established Constitutional rights.

3. Accordingly, Defendant is entitled to the defense of qualified immunity.

## II. Failure to Exhaust -- 42 U.S.C. §1997e(a)

4. Plaintiff was at all relevant times and the date of filing, a pre-trial detainee. Under Section 1997e(a) of the Prisoner Litigation Reform Act, Plaintiff must exhaust his administrative remedies before filing a Section 1983 lawsuit for damages.

5. The Prison Litigation Reform Act provides that "no action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

6. Plaintiff failed to properly exhaust his administrative remedies and therefore, his claims are barred.

## III. Failure to Mitigate

7. Without waiving his denials to Plaintiff's allegations and to the extent Plaintiff claims any damages against Defendant, the claims are barred to the extent Plaintiff failed to act reasonably to mitigate his damages.

8. To the extent Plaintiff has failed to mitigate his damages, any award of damages may be reduced by the amount by reason of said failure to mitigate.

## IV. 42 U.S.C. §1997e(e)

9. Plaintiff has requested compensatory damages but has not stated whether he seeks compensation for mental distress.

10. Section 1997e(e) of the PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code).

11. Plaintiff cannot show physical injury and, as a result, under Section 1997e(e) of the PLRA cannot seek damages for alleged mental distress.

### V. Immunity from Punitive Damages

12. To the extent Plaintiff seeks punitive damages from Defendant in his official capacity, Defendant asserts immunity from same.

13. First, an official capacity suit is tantamount to a claim against the government entity itself. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007).

14. Second, a municipality is immune from punitive damages under 42 U.S.C. §1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

15. Thus, Defendant is immune from punitive damages in his official capacity.

### VI. Exigent Circumstances

16. Plaintiff's claims center around the local government's response to Covid-19, a worldwide pandemic with, at that time, no known cure.

17. As such, the allegations constitute response to a public health emergency and Defendant's response to the emergency is and was reasonable.

18. The exigent nature of the response to the Covid-19 pandemic is a complete defense to the claims.

Defendant reserves the right to amend the affirmative defenses at any point throughout the course of discovery.

### **JURY DEMAND**

Defendant respectfully requests a trial by jury.

WHEREFORE, Defendant, Sheriff Dart, in his official capacity, respectfully requests that this Honorable Court enter an order: (a) dismissing Plaintiff's Complaint (Dkt. 29) with prejudice;

11

(b) assessing costs against Plaintiff; and (c) providing such other and further relief that this Honorable Court deems necessary and appropriate.

                                        Respectfully submitted,

                                        KIMBERLY M. FOXX
                                        State's Attorney of Cook County

By:    */s/: Jorie Johnson*
        Jorie Johnson
        Assistant State's Attorney
        500 Richard J. Daley Center
        Chicago, Illinois 60602
        (312) 603-7930
        Jorie.johnson@cookcountyil.gov

## CERTIFICATE OF SERVICE

I, Jorie R. Johnson hereby certify that I have caused true and correct copies of ***Defendant Sheriff Dart's Answer to Plaintiff's Amended Complaint (Dkt. 29.) and Affirmative Defense*** and foregoing to be served on all Parties pursuant to ECF, in accordance with the rules of electronic filing of documents on this 3rd day of July 2023. I further certify that in accordance with Fed. R. Civ. P. and LR 5.5 and the General Order on Electronic Case Filing (ECF), the foregoing was served upon non ECF users via U. S. postal mail at the below address:

Christopher James Mansoori
Cook County Jail
2019-1007189
2700 South California Avenue
Chicago, IL 60608

                                        */s/ Jorie R. Johnson*
                                          Jorie R. Johnson